Filed 5/31/13  P. v. Chestang CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061320 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD235702) |
| TYRECE RENE CHESTANG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed as modified.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Ronald A. Jakob, Deputy Attorneys General, for Plaintiff and Respondent.

Tyrece Rene Chestang and a cohort robbed and beat two individuals while Chestang was armed with a handgun and his cohort brandished a knife.  An information

charged the men with two counts of first degree robbery (counts 1 and 2) and one count of attempting to dissuade a witness (count 3). It was alleged that Chestang personally used a firearm in the commission of both robberies and that his cohort personally used a knife for the crimes. The information further alleged that Chestang was previously convicted of two felonies that qualified as prison priors, serious felonies and strike priors.

A jury found both men guilty as charged on all counts and enhancements. Chestang admitted all prior conviction allegations. The trial court sentenced Chestang to a total of 50 years to life, plus 23 years and four months in prison.

Chestang timely appealed from the judgment claiming the trial court erred in denying his pretrial motion to represent himself under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). The Attorney General asserts the trial court did not abuse its discretion in denying the motion and that Chestang received an unauthorized sentence because the trial court did not impose a full strength term on the firearm use enhancement attached to count 2. We agree with the Attorney General.

DISCUSSION

I. *Denial of Faretta Motion*

A. Facts

On the first day of trial, defense counsel informed the court that Chestang wished to bring a motion for substitution of appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). The trial court conducted a *Marsden* hearing outside the presence of the prosecutor. Chestang complained that defense counsel continuously told him that he had "a no-win case." He stated that counsel had a "nonchalant attitude to questions"

2

he posed regarding the case, telling him, "[H]ow does that help[?]  I don't see it, a jury won't buy it, the jury won't agree to it."  Chestang complained that counsel failed to obtain photographs and fingerprint evidence.  Chestang did not feel that counsel had conducted a thorough investigation or that he had "an effective defense strategy."  Chestang believed that counsel had not "aggressively pursued anything as far as just trying to get [him] off" and just pressured him to "take a deal" in the case.

Defense counsel responded to Chestang's allegations, explaining that he visited Chestang a couple of times, discussed the case with him, inquired about witnesses to investigate, subpoenaed a witness that Chestang had asked about and canvassed the crime scene.  Counsel recently gave Chestang an opportunity to talk to him, but Chestang hung up on him and refused to talk to him anymore.  Counsel claimed he told Chestang about deals and never pressured Chestang to take any deal, but was honest with Chestang about the evidence and the chances of success at trial, which upset Chestang.  After Chestang reiterated his complaints, defense counsel told the court that he had possession of the photographs and that to the best of his knowledge, the prosecutor never sought any fingerprint analysis which was "advantageous to . . . Chestang at this point."

The trial court denied the *Marsden* motion, explaining that counsel had obtained discovery, investigated the case and followed up on Chestang's leads, but that strategy and trial tactics were counsel's decisions to make.  Defense counsel then indicated that Chestang had told him earlier that "he may request a pro per status."  The trial court asked if Chestang was ready for trial "right now."  Chestang replied, "Not just this moment, no."  The trial court replied, "Then it's not timely."

3

B. Analysis

A criminal defendant has the right under the Sixth Amendment of the federal Constitution to conduct his or her own defense. (*Faretta*, *supra*, 422 U.S. at p. 819; *People v. Jenkins* (2000) 22 Cal.4th 900, 959.) Accordingly, when a defendant voluntarily and intelligently makes a timely, unequivocal assertion of the right to proceed pro se, the court must honor that request regardless of how unwise the decision may seem. (*People v. Windham* (1977) 19 Cal.3d 121, 127–128.) The right to self-representation must be invoked within a reasonable time before the commencement of trial and the trial court should consider the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion. (*People v. Marshall* (1996) 13 Cal.4th 799, 827.)

Chestang contends the trial court abused its discretion in denying his *Faretta* motion without any inquiry into the circumstances behind the request solely because it was brought on the first day of trial. Although the trial court could have conducted a more thorough inquiry regarding Chestang's request, review of the entire record shows that the request was untimely and equivocal. Accordingly, the court acted within its discretion in denying it.

On the first day of trial, Chestang moved to replace his counsel under *Marsden.* The trial court conducted a thorough hearing on the issue, finding that defense counsel had provided effective assistance of counsel, and explaining to Chestang that counsel was

4

not required to discuss trial strategy with him and that "tactics change as the case moves on" requiring counsel to "adjust on the fly." After the court denied Chestang's *Marsden* motion, defense counsel indicated that Chestang "may request a pro per status." Chestang, however, never formally made a *Faretta* motion. Chestang's conduct reflected ambivalence about self-representation and supported the trial court's decision to deny the motion. (*People v. Marshall* (1997) 15 Cal.4th 1, 23.)

Moreover, the record created during the *Marsden* hearing indicated that Chestang was frustrated with defense counsel because counsel rejected Chestang's suggestions regarding how to defend the case and honestly communicated with Chestang regarding his chances of success at trial. The record does not establish any deficiency in the quality of counsel's representation. Additionally, the timing of the request would reasonably cause disruption or delay in the proceedings. (*People v. Marshall*, *supra*, 13 Cal.4th at p. 827.) Our high court has "held on numerous occasions that *Faretta* motions made on the eve of trial are untimely." (*People v. Lynch* (2010) 50 Cal.4th 693, 722.) Because Chestang's request to represent himself was untimely and equivocal, the court acted well within its discretion when it denied the motion.

## II. *Unauthorized Sentence*

A. Facts

The trial court sentenced Chestang to consecutive terms of 25 years to life for the two robberies under the Three Strikes Law. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, undesignated statutory references are to this code.) For the firearm use enhancement (§ 12022.53, subd. (b)) attached to count 1, the court imposed an additional ten-year

5

term.  For the same firearm use enhancement attached to count 2, the prosecutor argued that Chestang should receive a consecutive "full force" sentence.  The trial court disagreed.  It imposed three years and four months, which constituted one-third of the ten-year term specified under subdivision (b) of section 12022.53.

B.  Analysis

The Attorney General claims that Chestang received an unauthorized sentence subject to correction on appeal for the firearm use enhancement attached to count 2.  She asserts that the firearm use enhancement required the imposition of "an additional and consecutive term of imprisonment in the state prison for ten years."  (§ 12022.53, subd. (b).)  We agree.

When a defendant is convicted of multiple offenses carrying determinate terms and the trial court imposes consecutive sentences, the count carrying the longest sentence is the "principal term" and the remaining counts are "subordinate."  (§ 1170.1, subd. (a).)  Generally, the trial court may impose only one-third of the middle term on a subordinate count and one-third of the term of any enhancement attached to a subordinate count.  (*Ibid.*)  However, " '[t]he consecutive sentencing scheme of section 1170.1 does not apply to indeterminate life terms, and therefore it has no application to sentencing calculations for three strikes defendants' " such as Chestang.  (*People v. Williams* (2004) 34 Cal.4th 397, 402, quoting *People v. Nguyen* (1999) 21 Cal.4th 197, 205.)  Additionally, conduct-based enhancements cannot exist separately from the underlying offense.  (*People v. Lyons* (1999) 72 Cal.App.4th 1224, 1228–1229 (*Lyons*).)

Where, as here, a firearm use enhancement is appended to a crime in which an indeterminate term is imposed, it must be applied at full strength because the fact that the enhancement is determinate does not render it subordinate within the meaning of section 1170.1.  (*Lyons*, *supra*, 72 Cal.App.4th at p. 1229.)  Accordingly, the abstract of judgment must be amended to add a full-term firearm use enhancement to Chestang's indeterminate term under the Three Strikes Law.  (*Id*. at p. 1226; *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [unauthorized sentence may be corrected at any time].)

DISPOSITION

The judgment is modified to reflect a consecutive ten-year term for the Penal Code section 12022.53, subdivision (b) allegation attached to count 2.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting this modification and forward it to the Department of Corrections and Rehabilitation.

McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

7